505 S.E.2d 354

**Otis Lynn ALLEN, Jr., as Personal Representative of the Estate of Otis Lynn Allen, Sr., Appellant,**

**v.**

**LONG MFG. NC, INC., and Glen Kinard, Defendants,**

**Of whom Long Mfg. NC, Inc., is Respondent.**

**No. 2878.**

Court of Appeals of South Carolina.

Heard May 7, 1998.
Decided Aug. 10, 1998.
Rehearing Denied Oct. 21, 1998.

Jeffrey S. Holcombe, Kenneth M. Suggs, and John S. Nichols, all of Suggs & Kelly, Columbia, for appellant.

Clarke W. Dubose, of Sinkler & Boyd, Columbia, for respondent.

HOWARD, Judge:

The personal representative of Otis Allen, Sr. (Allen) brought this products liability action against Long Manufacturing (Long) under the theories of strict liability and negligence. In deciding Long's motion for summary judgment, the trial judge found for Long as a matter of law on all of Allen's causes of action. Allen appeals. We reverse and remand.

## FACTS

The facts surrounding Allen's death are not in dispute. Allen was using a portable grain auger that did not belong to him to load grain onto a grain drill. A grain auger is a metal chute which conveys grain from its lower end to the top end, where it can be discharged into a bin or other container. The auger at issue is portable, meaning it has wheels on it, and by lifting its lower end it can be moved. The center of gravity is such that the lower end remains on the ground if it is positioned on level ground and there is no material in the chute. However, the center of gravity can change as material such as grain is conveyed to the top end. The auger can become unstable at any time during operation if no new material is fed into the chute at the lower end because of the weight shift toward the discharge end of the chute. The discharge end of the auger was 23 feet in the air at the time of the accident. After several minutes of operation, Allen was standing directly beneath the discharge end of the auger when the auger upended and struck him on the head, fatally injuring him. He had not anchored the lower end or supported the discharge end before using the auger. Allen's estate brought a wrongful death and pain and suffering action against Long,

the manufacturer of the auger, and Glen Kinard, the auger's owner.[1]

The auger at issue displayed a warning label. This label is in two parts. On the upper label, the word "CAUTION" precedes eleven specific instructions, including:

1. Read and understand owners manual before operating.

4. Make certain everyone is clear before operating or moving the auger.

7. Support discharge and or anchor intake to prevent upending.

At the bottom of this portion, the label states: "FAILURE TO HEED MAY RESULT IN PERSONAL INJURY OR DEATH." On the lower label, the word "WARNING" is followed by:

YOU MUST NOT OPERATE THIS AUGER UNLESS:

1. You are trained in its safe operation

and

2. You know and follow manufacturer's safety and operating instructions, your employer's work rules and applicable regulations.

AN UNTRAINED OPERATOR SUBJECTS HIMSELF AND OTHERS TO SERIOUS INJURY OR DEATH.

Long moved for summary judgment on the ground that the auger was not unreasonably dangerous because of the warning labels, which were adequate as a matter of law. Long also asserted that if Allen had followed the warnings, the accident would not have happened. The trial court granted Long's motion.

## LAW/ANALYSIS

The trial court granted summary judgment for Long on Allen's negligence and strict liability causes of action, holding 1) the auger's warnings were adequate as a matter of law, and, therefore the auger was not in an "unreasonably dangerous" condition; 2) the adequate warning fulfilled Long's duty of care to produce a safe auger; and 3) Allen's failure to follow

---

1. Glen Kinard is not a party to this appeal.

the warning was the proximate cause of his death.   Construing this court's decision in *Bragg v. Hi–Ranger,* 319 S.C. 531, 462 S.E.2d 321 (Ct.App.1996), to hold that a warning meeting recognized industry standards is adequate as a matter of law, the court ruled that Long's warning on the auger met this test.   We disagree with this characterization of the decision in *Bragg* and reverse the grant of summary judgment because we find that the sufficiency of the auger's warnings was a question of fact for the jury.

## I.   *Standard of Review*

A grant of summary judgment is proper only when it is clear there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994) (citing Rule 56(c), SCRCP).   In determining whether any triable issues of fact exist, the court should construe all ambiguities, conclusions, and inferences arising from the evidence most strongly against the moving party.   *Marchant v. Mitchell Distributing Co.,* 270 S.C. 29, 240 S.E.2d 511 (1977). "Even when there is no dispute as to the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied."   *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994).   Summary judgment is dependent on the existence of plain, undisputable facts on which reasonable minds cannot differ.   *Priest v. Brown,* 302 S.C. 405, 396 S.E.2d 638 (Ct.App. 1990).

## II.   *Product Liability*

In a product liability action under both negligence and strict liability theories, the plaintiff must establish "(1) that he was injured by the product;   (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant;   and (3) that the injury occurred because the product was in a defective condition *unreasonably dangerous* to the user."   *Madden v. Cox,* 284 S.C. 574, 580, 328 S.E.2d 108, 112 (Ct.App.1985)(emphasis added).   Further, "[l]iability for negligence requires, in addition to the above, proof that the manufacturer breached its

duty to exercise reasonable care to adopt a safe design." *Id.* at 580, 328 S.E.2d at 112.

The parties agree that Allen was injured by the auger and the auger was not altered from the manufacturer's original design. Therefore, the only questions before this court are whether genuine issues of material fact exist regarding 1) whether the auger was in "a defective condition unreasonably dangerous" to Allen, 2) whether Long breached its duty of care by failing to provide an adequate warning, and 3) whether Allen's failure to follow the warning was the proximate cause of his injuries. *Id.* at 580, 328 S.E.2d at 112.

## A. Unreasonably Dangerous Condition

South Carolina law recognizes the principles of strict liability in product liability actions and requires that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user... is subject to liability for physical harm caused to the ... user." S.Code Ann. § 15–73–10 (1976). However, a seller may prevent a product from being "unreasonably dangerous" if the seller places an adequate warning on the product regarding its use. If a warning is given which, if followed, makes the product safe for use, the product cannot be deemed defective or unreasonably dangerous. RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965); *see also, Anderson v. Green Bull, Inc.,* 322 S.C. 268, 471 S.E.2d 708 (Ct.App.1996).[2]

### 1. *Warning adequacy as question of law or fact*

In the case at bar, neither party disputes that the auger, as manufactured, requires a warning to be safe for consumer use. As Long stated in the memorandum filed in support of its motion for summary judgment,

> [t]here is no question but that a grain auger is a potentially dangerous piece of equipment. The dangers in using grain augers are so well recognized that the ASAE has for many years recommended several design parameters and several warnings for augers.

---

**2.** S.C.Code Ann. § 15–73–30 (1976) incorporates by reference the comments in the Restatement of Torts.

Therefore, no determination need be made regarding the duty to place a warning on the auger in question.

■ Once it is established that a product must display a warning to be safe, the question of the adequacy of the warning is one of fact for the jury as long as evidence has been presented that the warning was inadequate. Our research shows that nearly every other jurisdiction faced with this question has held that the adequacy of a warning is a question for the jury once the plaintiff has presented evidence that the warning is inadequate.[3]

### 2. Evidence of warning inadequacy

■ Summary judgment is inappropriate when facts are presented on which reasonable minds could differ. *Priest v.*

---

**3.** *McCullock v. H.B. Fuller Co.*, 981 F.2d 656 (2nd Cir.1992)(applying Vermont law); *Hahn v. Sterling Drug, Inc.*, 805 F.2d 1480 (11th Cir.1986)(applying Georgia law); *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311 (7th Cir.1983)(applying Wisconsin law); *Bryant v. Technical Research Co.*, 654 F.2d 1337 (9th Cir.1981)(applying Idaho law); *Billiar v. Minnesota Mining and Mfg. Co.*, 623 F.2d 240 (2nd Cir.1980)(applying New York law); *Hall v. Ashland Oil Co.*, 625 F.Supp. 1515 (D.Conn.1986)(applying Connecticut law); *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750 (Ct.App.1983); *Bushong v. Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992); *Anderson v. Heron Engineering Co.*, 198 Colo. 391, 604 P.2d 674 (1979); *Palmer v. Avco Distributing Corp.*, 82 Ill.2d 211, 45 Ill.Dec. 377, 412 N.E.2d 959 (1980); *Lakatosh v. Diamond Alkali Co.*, 208 N.W.2d 910 (Iowa 1973); *Long v. Deere & Co.*, 238 Kan. 766, 715 P.2d 1023 (1986); *Post v. American Cleaning Equipment Corp.*, 437 S.W.2d 516 (Ky.1968); *Pottle v. Up–Right, Inc.*, 628 A.2d 672 (Me.1993); *Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922 (Minn.1986); *Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688 (Miss.1988); *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623 (Mo.1968); *Streich v. Hilton–Davis*, 214 Mont. 44, 692 P.2d 440 (1984); *Oak Grove Investors v. Bell & Gossett Co.*, 99 Nev. 616, 668 P.2d 1075 (1983); *LeBlanc v. American Honda Motor Co., Inc.*, 141 N.H. 579, 688 A.2d 556 (1997); *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 432 A.2d 925 (1981); *Richards v. Upjohn Co.*, 95 N.M. 675, 625 P.2d 1192 (Ct.App.1980); *Seibel v. Symons Corp.*, 221 N.W.2d 50 (N.D.1974); *Anderson v. Klix Chem. Co.*, 256 Or. 199, 472 P.2d 806 (1970); *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975); *Berg v. Sukup Mfg. Co.*, 355 N.W.2d 833 (S.D.1984); *Pearson v. Hevi–Duty Electric*, 618 S.W.2d 784 (Tex.App.1981); *Haysom v. Coleman Lantern Co.*, 89 Wash.2d 474, 573 P.2d 785 (1978); *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983); *Schuh v. Fox River Tractor Co.*, 63 Wis.2d 728, 218 N.W.2d 279 (1974); *but see Evridge v. American Honda Motor Co.*, 685 S.W.2d 632 (Tenn.1985).

*Brown,* 302 S.C. 405, 396 S.E.2d 638 (Ct.App.1990). It is not enough that one create an inference which is not reasonable or an issue of fact that is not genuine. *Id.* Though "[t]he judge is not required to single out some one morsel of evidence and attach to it great significance when patently the evidence is introduced solely in a vain attempt to create an issue of fact," we conclude that Allen's expert testimony regarding the adequacy of the auger's warning in this case creates a genuine issue of material fact. *Main v. Corley,* 281 S.C. 525, 527, 316 S.E.2d 406, 406 (1984).

In his deposition testimony, Allen's expert opined:

If [Allen] read [the warning], he may have looked at this auger and believed it to be perfectly stable because it was stable when he started using it. And there is nothing in this to tell him how the center of gravity will change as the auger begins to get empty. So, nothing about this instruction tells him that this auger will get to be unsafe.

Additionally, he stated:

A: [The warning] did not fulfill the requirements of what is considered in engineering design as a warning. And for this reason a warning should be specific as to what the hazard is, and how to avoid the hazard, and what the consequences are, and this ... is not explicit about how to avoid or what the specific hazard itself is.

Q: So you're saying it should have said this auger if allowed to partially empty of grain will upend—if not—what should it have said?

A: Well, I have tried to design the wording, but you're talking about the subject area that should be covered there. It might suddenly tip over without any external contact or input as a result of the grain running out. It should address that issue in terms of the stability because, as written, the user may interpret the auger to be a stable device as it sits. There is no way for him to tell whether it is going to tip over or not and there is no instructions [sic] to him apprising him of that fact.

Allen's son testified that the auger had been in operation for five to ten minutes before the accident occurred. The expert testimony clearly indicates that the warning on the auger is insufficient in that it does not forewarn a party of the auger's

ability to become unstable after minutes of apparent stability. We find this constitutes sufficient evidence of the warning's inadequacy to create a genuine issue of material fact for the jury.

### 3. Bragg analysis

■ Long argued, and the trial court concluded, that this court's holding in *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E.2d 321 (Ct.App.1996), established that a warning is adequate as a matter of law if it complies with industry standards. We can understand the trial judge's reading of *Bragg*, which does contain language to this effect. However, such a principle was irrelevant to the holding in *Bragg*, since the *Bragg* court ruled that *no* warning was necessary to render the product safe. Consequently, we do not interpret *Bragg* to establish that a warning meeting industry standards is, as a matter of law, adequate. We reject this principle as unsound since it would allow the industry to set its own standard of safety, a proposition which finds no support from other jurisdictions, and which is antithetical to the underlying premise of strict liability.

The facts of *Bragg* involved an electrical contractor employee who died from injuries received when a hydraulic fluid hose caused the employee's aerial bucket to catch on fire. The fire forced the employee to leap from the aerial bucket, causing injuries which resulted in his death. At issue was whether the aerial bucket was defectively designed because it did not have a quick disconnect coupling for the hydraulic fluid hoses.

The court held 1) the bucket was not "unreasonably dangerous" in failing to include a quick disconnect coupling and 2) the manufacturer had no duty to place a warning on the bucket to prevent it from being deemed "unreasonably dangerous." The court weighed "the state of the art and industry standards ... relevant to show both the reasonableness of the design and that the product is dangerous beyond the expectations of the ordinary consumer." Id. at 543, 462 S.E.2d at 328.

*After* determining that the aerial basket was safe as built *without a warning,* the court also briefly summarized that:

Because evidence presented at trial undisputedly established that the aerial device met all appropriate standards

regarding warnings at the time of its manufacture and sale in 1984, we further conclude Bragg's strict liability claim based upon an alleged warning defect also fails.

Id. at 546, 462 S.E.2d at 330.

We interpret this statement as dicta because the *Bragg* court held that no duty to warn existed for the aerial basket, which was deemed safe as designed. Therefore, the adequacy of any warning placed on the product was an irrelevant issue since a product that is already deemed safe for consumer use as produced need not display a warning to prevent it from being "unreasonably dangerous," absent a finding that there is a duty to warn. *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965); *see also* S.C.Code Ann § 15–73–10 (1976); *Anderson v. Green Bull, Inc.*, 322 S.C. 268, 471 S.E.2d 708 (Ct.App.1996). Accordingly, we disagree with the trial court's determination that the adequacy of a warning is conclusively established by industry standards.

Allen also argues that the trial court erred in requiring him to establish a feasible design alternative to prove the auger was "unreasonably dangerous." Although Allen's expert testified the auger could be made safer so that it would require no warning, none of his refinements had been subjected to any engineering analysis to determine their effect upon the utility or portability of the auger. The trial court, relying on *Bragg*, held as a matter of law that none of Allen's proposed improvements presented evidence from which the jury could find that the auger was "unreasonably dangerous."

We need not address whether a feasible design alternative must be presented to survive summary judgment. Although we agree that Allen failed to present a factual issue on this point, .we conclude the court erred in ruling upon it because Long conceded that the auger required a warning to be made safe. South Carolina law does not require that a manufacturer refine a product which is made safe for use by an adequate warning so that the product does not need a warning to be safe. *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965). Long's concession that the auger was unreasonably dangerous without an adequate warning foreclosed Allen's argument that the auger could have been redesigned to make it safer, and renders moot the trial court's holding.

Long did not argue to the trial court and does not argue to this court that the auger is safe without a warning. Long does argue that the portable auger is rendered safe with the warning. Therefore, the determinative issue is whether or not the auger's warning is adequate such that it renders the auger safe.

### B.   Long's Duty of Care

As stated above, for Allen to establish Long's liability under a negligence theory, Allen must show that Long breached a duty of care to make the auger safer. The trial court held that Long complied with its duty of care, stating:

> Since, as a matter of law, the warning on the auger was adequate, and since, therefore, the auger was, as a matter of law, not in a defective condition or unreasonably dangerous, Long has met its duty of due care to provide an auger that was not in a defective condition or unreasonably dangerous.

Because the trial court's dismissal of Allen's negligence claim is premised on the legal adequacy of the auger's warning, and we hold that the auger's warning is a question of fact for the jury, we must reverse the trial court's determination that Long met its duty of care.

### C.   Proximate Causation/Failure to Heed Warning

As with any claim of liability for negligence, the breach of a duty of care must be the proximate cause of the resulting injury. *See Steele v. Rogers,* 306 S.C. 546, 413 S.E.2d 329 (Ct.App.1992). The plaintiff has the burden of showing that a warning would have made a difference in the conduct of the person warned. 63A AM. JUR. 2D *Products Liability* § 1240 (1997). Long argues and the trial court found that Allen's failure to heed the warning on the auger was the proximate cause of Allen's injuries because Allen's expert stated that if Allen had followed the auger's warnings, the accident would not have occurred. However, Allen's expert also stated that the warning, as written, was inadequate.

The Restatement on Torts states: "Where warning is given, the seller may reasonably assume that it will be read and heeded...." RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965). This section of the Restatement has been correctly interpreted to mean when an *adequate* warning

is given, the manufacturer may assume that it will be heeded by the product user. *Thomas v. Hoffman–La Roche*, 949 F.2d 806 (5th Cir.1992)(cited with approval in *Odom v. G.D. Searle & Co.*, 979 F.2d 1001 (4th Cir.1992)). The testimony by Allen's expert creates a factual issue as to whether a different, adequate warning could have changed Allen's conduct. Accordingly, we reverse the trial court's finding that the plaintiff failed to introduce evidence of causation. .

## CONCLUSION

The adequacy of the warning and the proximate cause of the accident are questions of fact for a jury. The trial court erred in granting summary judgment based on the warning's legal adequacy and the accident's proximate cause. Accordingly, the order of the trial court is reversed, and the case is remanded for further proceedings.

**REVERSED AND REMANDED.**

HEARN, J., concurs.

ANDERSON, J., concurs in result only.